**THE PEOPLE of the State of Colorado, Petitioner,**

v.

**Mark Lowe LUTHER, Respondent.**

**No. 01SC877.**

Supreme Court of Colorado,
En Banc.

Nov. 25, 2002.

Rehearing Denied Dec. 16, 2002. *

Ken Salazar, Attorney General, John J. Krause, Assistant Solicitor General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy

* Justice MARTINEZ and Justice BENDER would grant the Petition.

State Public Defender Denver, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

## I. Introduction

In this case, defendant, Mark Lowe Luther, served a sentence of incarceration for reckless manslaughter, was released on parole, and then violated his parole by commission of the crime of escape. The trial court imposed a consecutive sentence on the escape charge, to begin after completion of the revoked parole incarceration period. Luther appealed, and the court of appeals reversed the trial court in *People v. Luther*, 43 P.3d 660 (Colo.App.2001), holding that the effect of the sentence would be the imposition of consecutive mandatory parole periods, in violation of section 18–1–105(1)(a)(V)(E), 6 C.R.S. (2002).[1] That statute provides that when an offender receives two or more consecutive felony sentences, the governing mandatory parole period shall be the one for the higher class felony.

We granted certiorari[2] and now reverse the judgment of the court of appeals. Consistent with the overall statutory structure regarding sentencing and parole, we conclude that Luther was not facing two sentences with associated mandatory parole periods, and therefore section 18–1–105(1)(a)(V)(E) is inapplicable.

## II. Facts and Procedural History

Mark Lowe Luther pleaded guilty to reckless manslaughter, a class four felony.[3] In 1995, the trial court sentenced Luther to an eighteen-month term of imprisonment plus a three-year period of mandatory parole. After approximately one year of incarceration, the parole board paroled Luther, with the condition that he complete 180 days of inten-

sive supervised parole ("ISP"). During ISP, Luther fled to Texas, where authorities arrested him and extradited him back to Colorado. Upon his return to Colorado, Luther was charged with escape pursuant to sections 17–27.5–104 and 18–8–208(1) and (2), 6 C.R.S. (2002), and theft of an electronic monitoring device pursuant to section 18–4–401(2)(c), 6 C.R.S. (2002). The parole board revoked Luther's parole and he remained in custody awaiting disposition of the new charges.

As part of a plea agreement, Luther agreed to plead guilty to a charge of attempted escape from ISP, a class four felony, pursuant to section 18–8–208.1(1), 6 C.R.S. (2002), in exchange for the dismissal of the remaining charges. The trial court sentenced Luther to a three-year stipulated sentence in the Department of Corrections ("DOC"), plus a three-year period of mandatory parole as required by section 18–1–105(1)(a)(V)(A). The trial court ordered that this sentence was to be served consecutively to the underlying manslaughter sentence, as required by section 18–8–208.1(1).

Luther filed a Crim.P. 35(a) motion arguing that the sentence imposed was illegal as it would require him to serve consecutive mandatory parole periods in violation of section 18–1–105(1)(a)(V)(E). The trial court denied the motion, reasoning that when Luther was reincarcerated on the parole revocation, he was no longer serving his original sentence, but was rather serving a revocation of parole period, such that the consecutive sentences imposed did not violate section 18–1–105(1)(a)(V)(E).

Luther appealed this ruling to the court of appeals, which reversed the trial court order. The court of appeals held that while the escape statute authorized a consecutive sentence, the trial court could not require Luther to serve two mandatory parole periods.

---

1. Section 18–1–105 was renumbered in 2002 and is now found at section 18–1.3–401, 6 C.R.S. (2002). Because both the trial court and the court of appeals referred to it in this case as section 18–1–105 and because section 18–1–105 was in effect at the time of Luther's conviction, we will also refer to it as such.

2. We granted certiorari on "[w]hether the Court of Appeals erred in holding that § 18–1–

105(1)(a)(V)(E), C.R.S. (2001) was applicable to the defendant and thus prohibited requiring him to complete his manslaughter sentence prior to commencement of his consecutive sentence for attempted escape."

3. Luther pleaded guilty to reckless manslaughter pursuant to section 18–3–104(1)(a), 6 C.R.S. (2002).

*People v. Luther,* 43 P.3d 660, 661 (Colo.App. 2001). Because Luther had not completed serving his period of mandatory parole for the manslaughter sentence, the court concluded that the effect of the trial court's ruling would be to require consecutive mandatory parole periods, thus violating section 18–1–105(1)(a)(V)(E). *Id.* at 662.

The People sought certiorari, arguing that the court of appeals erred in concluding that section 18–1–105(1)(a)(V)(E) applied to Luther. We agree, and now reverse.

### III. Statutory Interpretation

 The basic rules of statutory interpretation are so oft-stated as to be rote. First, we begin with the proposition that we have a fundamental responsibility to interpret statutes in a way that gives effect to the General Assembly's purpose or intent in enacting a statute. *Martin v. People,* 27 P.3d 846, 851 (Colo.2001). To accomplish this objective, the court must begin with the plain language of the statute. *Id.* If the statute is unambiguous and does not conflict with other statutory provisions, we need look no further. *Id.* If, however, the language of the statute is ambiguous, or in conflict with other provisions, we then look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme, to ascertain the correct meaning of a statute. *Id.*

 We presume that the General Assembly intended the entire statute to be effective and intended a just and reasonable result. § 2–4–201(1)(b) and (c), 1 C.R.S. (2002). "[W]e must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988). If an interpretation would yield an absurd result, it is disfavored. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1192 (Colo.1996).

### IV. Analysis

This case requires us to determine the effect of section 18–1–105(1)(a)(V)(E), which directs that when a court imposes consecutive sentences for two or more felonies, the mandatory parole period shall be the period for the highest class felony of which the defendant is convicted. Specifically, the statute states that:

> If an offender is sentenced consecutively for the commission of two or more felony offenses pursuant to sub-subparagraph (A) of this subparagraph (V), the mandatory period of parole for such offender shall be the mandatory period of parole established for the highest class felony of which such offender has been convicted. ·

§ 18–1–105(1)(a)(V)(E).

This statute is part of the mandatory parole construct, implemented by the General Assembly in 1993. The penalties for felony offenders under that scheme include both an incarceration component and a mandatory parole component. *See* Ch. 322, sec. 7, § 18–1–105(1)(a)(V)(A)–(E), 1993 Colo. Sess. Laws 1981, 1981–83. The statutes provide presumptive maximum and minimum sentences for imprisonment and require that a mandatory period of parole must attach to each imprisonment sentence, the length of which is dependent on the class of the felony. § 18–1–105(1)(a)(V)(A). The statute does not permit the parties or the trial courts to waive or suspend any portion of the mandatory period of parole, but vests in the state board of parole the exclusive authority to release an offender from his or her designated parole period after a determination that the offender has been sufficiently rehabilitated and can no longer benefit from the parole supervision. § 18–1–105(1)(a)(V)(B).

In this case, Luther argues that his sentence violated section 18–1–105(1)(a)(V)(E) by creating the equivalent of two periods of mandatory parole. Luther had completed his first prison term and had commenced his mandatory period of parole. He was reincarcerated due to the parole violation. The trial court sentenced him to a consecutive sentence of three years in DOC with three years of mandatory parole. The net effect of that order is that Luther must serve out the remainder of the term of reincarceration resulting from his parole violation before beginning the escape sentence and then serving the parole attaching to that escape sentence. Luther contends that the period of reincar-

ceration attributable to a parole violation is itself mandatory parole, and thus must merge into the mandatory parole period associated with the attempted escape charge. The effect of his argument is that he would suffer no additional penalty associated with the parole revocation because that penalty would merge into the mandatory parole attached to the attempted escape charge.

We disagree with Luther's analysis for two reasons. First, we conclude that the trial court that imposed the attempted escape sentence had no authority over the parole revocation reincarceration. Second, we conclude that the parole revocation reincarceration was itself neither a period of parole nor a sentence that carried parole pursuant to section 18–1–105(1)(a)(V)(A).

As directed by statutory construction principles, we look initially to the language of the statute to determine the overall meaning and intent. Luther had discharged his sentence to imprisonment on the manslaughter charge, and that sentence was no longer operable in any sense. § 18–1–105(1)(a)(V)(D) ("If the offender has been granted release to parole supervision by the state board of parole, the offender shall be deemed to have discharged the offender's sentence to imprisonment.") He was released on mandatory parole and reincarcerated for a parole violation.

In addressing the mandatory period of parole, the General Assembly clearly stated that the parole board maintains exclusive authority to grant parole. Once an offender is on parole, the parole board alone has the power to continue, modify, or revoke parole if the offender violates the terms and conditions of that parole. § 17–22.5–403(1) and (8)(a), 6 C.R.S. (2002). Thus, once the parole board released Luther to his mandatory parole period, the trial court lacked authority to impact the terms of that parole, or the penalties for violation of that parole. *See Martin v. People*, 27 P.3d 846, 858 (Colo.2001) (an offender's reincarceration period for a parole

violation is limited only by the parole board's statutory authority); *Craig v. People*, 986 P.2d 951, 958 (Colo.1999) (recognizing that the state board of parole has the authority to discharge an offender from parole, but the trial court lacks discretion to waive or suspend the mandatory period of parole).

A plain reading of the statute dictates that the sentencing court did not have authority over Luther's parole revocation proceedings, or the sentence imposed thereon.

The two sentences at issue in this case are the sentence on manslaughter, which carried a three-year period of parole; and the sentence on attempted escape, which also carried a three-year period of parole. If those two sentences had been imposed at the same time to run consecutively to one another, then clearly Luther would have faced a three-year period of mandatory parole at the conclusion of his imprisonment by operation of section 18–1–105(1)(a)(V)(E).[4]

That was not, however, the case. Luther received the manslaughter sentence in 1995, and discharged the imprisonment component in 1996 when he was released on parole. By reason of violation of the terms of that parole, Luther was reincarcerated. He faced a possibility of a period of reincarceration for that violation of up to three years, minus whatever credit he had obtained. The sole question thus becomes whether the General Assembly intended that the period of reincarceration be classified as "mandatory parole" such that it would fold into the mandatory parole period attached to the escape sentence.

 We conclude that once Luther was reincarcerated, he was neither serving a sentence that carried mandatory parole, nor serving a period of mandatory parole as contemplated by the statute at issue. Clearly, a sentence imposed because of a parole revocation does not carry with it a mandatory period of parole.[5] More importantly, rein-

---

4. Since the two terms of parole were the same, the only real impact of the statute would be to assure that Luther was not subject to consecutive terms of parole, akin to his consecutive terms of imprisonment.

5. Section 18–1–105(1)(a)(V)(A) establishes that only sentences for the commission of felonies carry a period of mandatory parole. Hence, the reincarceration for the parole violation does not in itself carry with it a term of mandatory parole.

carceration for violation of parole is not itself "parole" as contemplated by section 18–1–105(1)(a)(V)(A). As set forth in 17–22.5–403(8)(a), when an offender is on parole and violates the conditions of that parole, the state board of parole has the option of *revoking* parole and returning the offender to a place of confinement for any period of time up to the time remaining on such person's mandatory period of parole.

Reading the statutes as a whole, we determine that Luther's interpretation leads to the absurd result of vitiating any penalty associated with violation of the terms of his parole. That reading is not consistent with the treatment in the statutes of revoked parole. Once parole is revoked, the statutes anticipate that the offender can be confined for the remaining period of parole. Nothing in the statutes provides that the offender is at risk of such confinement only if he faces no other mandatory parole periods. Although the period of confinement is delimited by the original mandatory parole period, the offender is not still on "parole" as that term is used in the statutes. "Parole" is a condition of constrained liberty involving a "release from institutional custody." § 17–22.5–404(1), 6 C.R.S. (2002). At the time of resentencing, Luther was not "on parole" in the sense in which that term is used in the statutes.

Therefore, both because we do not view the trial court as having any authority over the period of incarceration under the revoked parole, and because the period of confinement attributable to parole revocation was not a "period of mandatory parole" as contemplated by the statutes, we hold that section 18–1–105(1)(a)(V)(E) is inapplicable.

### V. Continuous Sentencing

Luther's situation is more aptly analyzed under the procedure found in section 17–22.5–101, 6 C.R.S. (2002). Under that section, the DOC has the clear ability and statutory authority to handle separate sentences. Section 17–22.5–101 provides that, "when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence." Because the legislature enacted the provisions of 18–1–105(1)(a)(V) after section 17–22.5–101 and made no attempt to alter section 17–22.5–101, we interpret the statutes as to give effect to both sections. § 2–4–201(1)(b); *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988).

Pursuant to section 17–22.5–101, Luther's parole revocation reincarceration period and his new sentence for attempted escape are one continuous sentence, with one period of mandatory parole following. Luther will not be eligible for parole until the completion of all the incarceration time Luther owed. *See Spoto v. Colo. State Dep't of Corr.,* 883 P.2d 11, 15 (Colo.1994) (applying section 17–22.5–101 to a situation where both mandatory and discretionary parole provisions applied and holding that where consecutive sentences are imposed, there is no need for one particular sentence to dominate; thus section 17–22.5–101 requires that separate sentences be construed as one continuous sentence and denies an offender eligibility for parole until the completion of all incarceration). In calculating Luther's parole eligibility dates for the consecutively imposed sentences, the DOC would treat the parole revocation and the attempted escape sentence as one continuous sentence. Looking only to the parole revocation sentence, Luther is immediately eligible for parole. § 17–22.5–403(8). However, for his attempted escape sentence, Luther becomes eligible for parole after 18 months of incarceration. § 17–22.5–403(1). Because Luther must complete all incarceration owed where consecutive sentences are imposed, Luther first becomes eligible for parole after the 18 months he must serve on the escape sentence. Hence, that date would be his presumptive parole eligibility date. On the other hand, Luther's mandatory release date would not occur until the expiration of approximately five years of imprisonment the cumulative total of the two years left on his parole reincarceration period, and the three-year sentence for the attempted escape. Once released on parole, he faces the three-year mandatory period prescribed by section 18–1–105(1)(a)(V)(A) for the attempted escape.

By analyzing Luther's sentences under the continuous sentencing statute, we reach an

outcome consistent with our view of the import of the statutes as a whole.

## VI. Conclusion

The trial court's consecutive sentence on the attempted escape charge of three years in DOC plus mandatory parole did not violate section 18–1–105(1)(a)(V)(E). We reverse the judgment of the court of appeals and return the case for remand to the trial court and reinstatement of Luther's original sentence.

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice MARTINEZ dissenting:

The Majority finds section 18–1–105(1)(a)(V)(E), 6 C.R.S. (2002) inapplicable in this case because the trial court did not have authority over the parole revocation proceedings and sentencing on the prior felony conviction. Because the Majority's interpretation, requiring a trial court's authority over a prior sentence, is inconsistent with the plain meaning of section 18–1–105(1)(a)(V)(E), and because the Majority has failed to explore the implications of its interpretation, I respectfully dissent.

The relevant facts are not in dispute, and thus I only repeat the essential details. When Mark Lowe Luther had discharged his term of incarceration on a reckless manslaughter conviction, a class four felony, he began serving a period of mandatory parole. He violated the mandatory parole when he fled to Texas, and subsequently pled guilty to attempted escape, also a class four felony. The trial court sentenced Luther to three years in the Department of Corrections, to be served consecutively to Luther's reincarceration for the period remaining on mandatory parole.

### I. Plain Meaning

I agree with the Majority that our interpretation of a statute must give effect to the General Assembly's purpose or intent in enacting the statute. *Martin v. People,* 27 P.3d 846, 851 (Colo.2001). If the statutory language clearly sets forth its purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *Id.* In light of our rules of statutory construction, and because section 18–1–105(1)(a)(V)(E) is clear, we need look no further than its express language.

Although already quoted by the Majority, I repeat section 18–1–105(1)(a)(V)(E) to show that an offender sentenced consecutively to two or more felonies listed in sub-subparagraph (A) serves only the mandatory period of parole for the highest class felony:

> If an offender is sentenced consecutively for the commission of two or more felony offenses pursuant to sub-subparagraph (A) of this subparagraph (V), the mandatory periods of parole for such offender shall be the mandatory period of parole established for the highest class felony of which such offender has been convicted.

§ 18–1–105(1)(a)(V)(E). In my view, that provision clearly applies because Luther was sentenced consecutively for the commission of two felony offenses under sub-subparagraph (A): the first in August 1995 for reckless manslaughter, a class four felony, and the second for attempted escape in July 1997, also a class four felony; and Luther faced two periods of mandatory parole. A plain-meaning application of section 18–1–105(1)(a)(V)(E) to Luther's felony convictions requires that he commence his attempted escape sentence upon his conviction of that offense—not, as the trial court ordered, after the conclusion of Luther's reincarceration for violation of his mandatory parole. Maj. Op. at 1015. Because Luther was sentenced consecutively for the commission of two felonies, the mandatory period of parole for the highest class offense of which he was convicted is the period of parole he must serve. Since both of his convictions were class four felonies, either his mandatory parole upon the reckless manslaughter or his mandatory parole on the attempted escape must be served—but not both.

Section 18–1–105(1)(a)(V)(E) works in conjunction with section 17–22.5–101, 6 C.R.S. (2002), to assure that periods of incarceration precede one period of mandatory parole. Specifically, section 17–22.5–101 states that, for purposes of determining parole eligibility, an offender's separate sentences are con-

strued as one continuous sentence. As such, section 17–22.5–101 requires completion of all incarceration before an offender is parole eligible. In the case of a consecutive sentence, section 18–1–105(1)(a)(V)(E) prohibits multiple periods of mandatory parole. In conjunction, these provisions require that, in the event of a consecutive sentence, the incarceration portions of the sentence must be served before the mandatory parole, and that only one period of mandatory parole attaches. Therefore, Luther should serve one period of mandatory parole after he completes the incarceration portion of his attempted escape sentence.

## II. The Trial Court's Authority Over the Prior Sentence

The Majority's contention, that the trial court had no authority over the parole revocation proceedings and sentencing on the prior reckless manslaughter conviction, and that section 18–1–105(1)(a)(V)(E) is therefore inapplicable, reads a requirement into the statute that is not there. Maj. Op. at 1015, 1016–1017. Because the Majority conditions the applicability of section 18–1–105(1)(a)(V)(E) on the court's authority over the prior proceedings, the Majority's interpretation limits the scope of section 18–1–105(1)(a)(V)(E) to apply only when the same court sentences an offender to multiple felony offenses. Nothing in section 18–1–105(1)(a)(V)(E) even suggests that the same judge must sentence an offender on each of the two or more felony offenses for only one period of mandatory parole to attach. Moreover, the logical extension of the Majority's interpretation leads to absurd results. Specifically, the Majority fails to account for those circumstances in which mandatory parole has not been revoked at the time of sentencing on a new offense. It is not uncommon for an offender to receive a consecutive sentence for a separate felony while still serving the incarceration component of an earlier sentence. Under the Majority's reasoning, if the consecutive sentence is not imposed by the same court that imposed the earlier sentence, section 18–1–105(1)(a)(V)(E) would be inapplicable because the court had no authority over the earlier sentencing proceedings. As a result, the offender, at the time of sentencing on his second offense, would be exposed to two periods of mandatory parole.

I presume that the Majority does not intend to restrict the application of section 18–1–105(1)(a)(V)(E) to those circumstances where a single judge imposes all the sentences. Therefore, the Majority's holding is not truly founded on the authority of the sentencing court, but instead on the basis that the offender who is reincarcerated is not serving a period of mandatory parole. I next address this contention.

## III. A Reincarcerated Offender is Serving Mandatory Parole

In 1993, the General Assembly implemented a new sentencing scheme comprised of two separate components: a term of incarceration and a period of mandatory parole. § 18–1–105(1); *Craig v. People*, 986 P.2d 951, 958, 961–62 (Colo.1999). Section 18–1–105(1)(a)(V)(A) designates the length of mandatory periods of parole for felons, basing the length of the parole periods on the class of felony for which the individual was convicted. § 18–1–105(1)(a)(V)(A); *Martin*, 27 P.3d at 850.

This new sentencing scheme was a compromise to reduce prison time for offenders, thereby saving funds, Hearing on H.B. 93–1302 Before the House Judiciary Committee, 59th General Assembly, 1st Reg. Sess. (Feb. 16, 1993); simultaneously, the measure imposed a mandatory period of parole upon release from the custody of the department of corrections. *Id.* The net effect of this scheme resulted in keeping an offender in the system longer than the previous sentencing method, as the offender was supervised after release to ensure his successful integration into the community. *Id.; see* § 17–22.5–102.5, 6 C.R.S. (2002). Therefore, the legislation's intent was not punitive; instead, it served to maintain public safety while reducing costs of incarceration.

Mandatory parole is an addition to the sentence of incarceration on a felony conviction; the portion to be served in prison is discharged once the felon is released to mandatory parole. § 18–1–105(1)(a)(V)(D). Thus,

although an offender has completed his sentence to incarceration, he has not discharged his sentence in its entirety and must also complete a period of post-incarceration supervision. *Martin,* 27 P.3d at 858 (once paroled, a mandatory parolee has discharged his prison sentence as a matter of law pursuant to section 18–1–105(1)(a)(V)(D), but must still fulfill the mandatory parole period of offender's sentence); *People v. Johnson,* 13 P.3d 309, 313 (Colo.2000) (mandatory parole is a distinct element of sentencing, separate from the terms of incarceration or length of sentence imposed by the trial court).

Mandatory parole is different from the traditional notions of parole. *Craig,* 986 P.2d at 963. Prior to the mandatory parole-sentencing scheme, offenders could choose to serve some of their sentence in the community under supervision and reduce their period of incarceration. *Id.* Some offenders, however, chose to waive parole and serve their entire sentence within prison, in part to avoid post-release supervision. *Id.* After implementation of the new sentencing scheme, however, offenders must serve and cannot waive mandatory parole. § 18–1–105(1)(a)(V)(B).

As suggested before, one purpose of post-incarceration supervision is to ensure the successful reintegration of an offender into a community. § 17–22.5–102.5. In some circumstances after a parole violation, mandatory parole can be served in a community corrections program, in home detention, or within a place of confinement. § 17–22.5–403(9)(f), 6 C.R.S. (2002). If a violation results in an offender's reincarceration, he serves the period remaining on the mandatory parole of his original sentence in a place of confinement, § 17–22.5–403(8)(a), 6 C.R.S. (2002); the violation does not produce a new sentence. This proposition is further supported by Representative Kerns explanation, sponsor of H.B. 93–1002, that if mandatory parole is revoked, the offender continues to "serv[e] the community sentence, but [is] doing it in prison." Hearing on H.B. 93–1002 Before the House Judiciary Committee, 59th General Assembly, 1st Reg. Sess. (March 2, 1993)

(Amendment H.B. 1002.007 initially contained provisions for parole eligibility and earned time which were subsequently incorporated into H.B. 93–1302 in the April 2, 1993 Senate Judiciary Comm. Hearing).

In compliance with this sentencing scheme, Luther's reckless manslaughter felony sentence was divided into two components: an eighteen-month incarceration at the department of corrections and a mandatory parole period of three years. Luther was serving the mandatory parole component of his sentence on reckless manslaughter at the time of his attempted escape. The Majority mischaracterizes Luther's sentence. Although it initially acknowledges that a penalty to a felony offense includes components of a term of incarceration and mandatory parole, Maj. Op. at 1015, it later concludes, contradictorily, that since Luther had discharged his term of incarceration, he had discharged his sentence, Maj. Op. at 1016. Again, although Luther had discharged his term of incarceration, his sentence on the reckless manslaughter conviction, a class four felony, remained incomplete.

Further, the legislature intended that the mandatory parole period commence at the conclusion of the term of incarceration. § 18–1–105(1)(a)(V)(D). While reincarcerated for the term of mandatory parole, an offender is eligible at any time during reincarceration for release into the community as determined by the parole board. § 17–22.5–403(8)(a). Without imposing only one period of mandatory parole at the conclusion of the term of incarceration, Luther could be released to the community to serve the remainder of mandatory parole before commencing his term of incarceration on the attempted escape conviction. This absurd result is precisely what the General Assembly intended to avoid by the requirement in section 18–1–105(1)(a)(V)(E) that "the mandatory period of parole ... shall be the mandatory period of parole established for the highest class felony." § 18–1–105(1)(a)(V)(E).

The Majority addresses this absurdity by invoking section 17–22.5–101 [1] to ensure Lu-

---

1. The Majority's selective application of section 17–22.5–101, 6 C.R.S. (2002) to Luther's reincar-

ceration on his parole violation, to the exclusion of the rest of his sentence for reckless man-

ther's incarceration until he is eligible for parole on his attempted escape conviction. Specifically, the Majority's application of section 17–22.5–101 requires Luther to complete all terms of incarceration prior to all periods of mandatory parole. Because Luther remains subject to incarceration until he is parole eligible on the attempted escape offense, he must serve that offense first. Maj. Op. at 1017. As the Majority concedes, Luther is immediately parole eligible on the reincarceration of the mandatory parole violation. As such, section 17–22.5–101 forces the Majority to require Luther to serve his consecutive sentence for attempted escape before the sentence to which the Majority contends it is consecutive. According to the Majority, the attempted escape sentence is consecutive to the reincarceration period on the parole violation. Yet the Majority would have the reincarceration period served after the incarceration portion of the attempted escape sentence. While the Majority avoids an absurd result, it does so only by altering the meaning of the word "consecutive." Therefore, I remain unconvinced by the Majority's reasoning.

## IV. Conclusion

While on mandatory parole, Luther's impermissible departure from this state led to his sentence on attempted escape, a class four felony pursuant to section 18–8–208.1, 6 C.R.S. (2002). Section 18–8–105(1)(a)(V)(E) applies because Luther was sentenced consecutively for two felony convictions and both felonies have required periods of mandatory parole as listed in sub-subparagraph (A). Therefore, Luther should serve only one period of mandatory parole at the conclusion of his term of incarceration. Because the Majority ignores the plain meaning of section 18–1–105(1)(a)(V)(E) and finds it inapplicable

to Luther's consecutive sentence, I respectfully dissent.

I am authorized to say that Justice BENDER joins in this dissent.

slaughter, results in giving the phrase "all sentences" dual meanings. Undoubtedly, the General Assembly regarded "all sentences" to mean an entire sentence, including both a term of incarceration and a period of discretionary parole, since section 17–22.5–101 was enacted before the enactment of mandatory parole. After enactment of section 18–1–105, "all sentences"

in section 17–22.5–101 still includes an entire sentence—a term of incarceration and a period of mandatory parole. The Majority implies, however, that "all sentences" can, in select circumstances, have an entirely different meaning. Specifically, it includes in "all sentences" only the period of Luther's reincarceration resulting from the violation of mandatory parole.