The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Scott Alan FRAZIER, Defendant–Appellant.

No. 02CA1585.

Colorado Court of Appeals,
Div. V.

April 24, 2003.

Rehearing Denied May 29, 2003.

Certiorari Granted Oct. 6, 2003.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Earl S. Wylder, Greenwood Village, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

In this appeal concerning the version of § 42–4–1301(9) in effect from July 1 to September 25, 2001, defendant, Scott Alan Frazier, appeals the sentence imposed by the trial

court following his guilty plea to vehicular homicide. We affirm.

In August 2001, defendant was driving a motorcycle when he was involved in an accident. The victim, a passenger on the back of defendant's motorcycle, was thrown from the motorcycle and died at the scene. Defendant's blood alcohol content was determined to be 0.145 grams of alcohol per one hundred milliliters of blood.

Pursuant to a plea agreement, defendant pleaded guilty to vehicular homicide under § 18–3–106(1)(a) and (b), C.R.S.2002. At the providency hearing, the trial court advised defendant that the crime of vehicular homicide committed while driving under the influence was a class three felony and that he could be sentenced to the custody of the Department of Corrections (DOC) for a term between two and twenty-four years. Defendant acknowledged that he understood the advisement. The court accepted his plea and set the matter for sentencing.

Before the sentencing hearing, defendant filed a motion in which he argued that under the version of § 42–4–1301(9)(a)(II) enacted in Colo. Sess. Laws 2001, ch. 229, at 789 (Senate Bill 01–168), the maximum sentence for vehicular homicide was one year in the county jail. Relying in part upon the subsequently amended version of that section enacted in Colo. Sess. Laws 2001, ch. 1 at 2 (2d Extraordinary Session)(Senate Bill 01S2–008), the trial court rejected defendant's argument and sentenced him to six years in the custody of the DOC. This appeal followed.

Defendant contends that under Senate Bill 01–168 he was subject to a maximum possible punishment of one year in the county jail for his vehicular homicide conviction under § 18–3–106(1)(b)(I), C.R.S.2002. We disagree.

■ The interpretation of statutes is a question of law subject to de novo review. *Hendricks v. People*, 10 P.3d 1231 (Colo. 2000).

■ In construing a statute, we must ascertain and effectuate the legislative intent, which is to be discerned, when possible, from the plain and ordinary meaning of the statutory language. *People v. Longoria*, 862 P.2d 266 (Colo.1993). Constructions that defeat the obvious legislative intent should be avoided, and, where possible, a statute must be read and considered as a whole and interpreted to give consistent, harmonious, and sensible effect to all its parts. *People v. Dist. Court*, 713 P.2d 918 (Colo.1986). We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Drake*, 983 P.2d 135 (Colo. App.1999).

■ When the statutory language is clear and unambiguous, it must be construed as written, without resort to interpretive rules of statutory construction. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994). If, however, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply rules of statutory construction to determine the construction that accords with the objective of the legislation. *People v. Terry*, 791 P.2d 374 (Colo.1990). If the language of the statute is ambiguous or in conflict with other provisions, we then look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme. *People v. Luther*, 58 P.3d 1013 (Colo.2002).

As relevant here, a person commits vehicular homicide when he or she "operates or drives a motor vehicle while under the influence of alcohol ... and such conduct is the proximate cause of the death of another." Section 18–3–106(1)(b)(I). This strict liability crime is a class three felony. *See* § 18–3–106(1)(c), C.R.S.2002. Under the general sentencing statute, the available sentencing range for class three felonies committed on or after July 1, 1993, is two to twenty years in the custody of the DOC. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2002.

Senate Bill 01–168, titled "Concerning the requirement of the completion of level II alcohol treatment for persistent drunk drivers, and making an appropriation therefor," was passed by the General Assembly during the 2001 legislative session. It amended § 42–4–1301(9)(a), which sets out the penal-

ties for the misdemeanor offense of driving a motor vehicle while under the influence of alcohol.

As pertinent here, § 42–4–1301(9)(a)(II) was amended to read as follows:

An offender shall be punished by imprisonment in the county jail for not less than ninety days nor more than one year, and in addition, the court may impose a fine of not less than five hundred dollars nor more than one thousand five hundred dollars upon a conviction of a violation of any of the following:

. . .

(B) Section 18–3–106(1)(b)(I), C.R.S. [vehicular homicide—driving under the influence]. . . .

Colo. Sess. Laws 2001, ch. 229 at 789–90. Before that amendment, § 42–2–1301(9)(a)(II) provided such penalties for violations of certain parts of § 42–4–1301(1) occurring within five years after another violation of, inter alia, § 18–3–106(1)(b)(I). Senate Bill 01–168 similarly amended § 42–4–1301(9)(a)(IV), (b)(II), and (b)(IV). *See* Colo. Sess. Laws 2001, ch. 229 at 790–92.

In its second extraordinary session in 2001, the General Assembly passed Senate Bill 01S2–008. Colo. Sess. Laws 2001, ch. 1 at 2 (2d Extraordinary Session). As pertinent here, the bill stated that Senate Bill 01–168 "was intended as a conforming amendment only but may inadvertently have created ambiguity in the applicable penalties for the crimes of vehicular assault, vehicular homicide, and second and subsequent convictions for driving under the influence." Senate Bill 01S2–008 re-amended § 42–4–1301(9) accordingly, and specifically stated:

The applicable penalties for [vehicular assault and vehicular homicide] were never intended to be, and never were, reduced as a result of any provision in Senate Bill 01–168, and the penalties set forth for such crimes in title 18, C.R.S., have at all relevant times continued to apply. . . .

Colo. Sess. Laws 2001, ch.1, § 1(a)-(b) at 1 (2d Extraordinary Session).

It is undisputed that Senate Bill 01–168 was in effect from July 1 until September 25, 2001, when Senate Bill 01S2–008 became ef-fective, and that defendant committed the crime during that period. Thus, defendant contends that he cannot be imprisoned for more than one year in the county jail.

In our view, the language of Senate Bill 01–168, purporting to provide a maximum penalty of one year in the county jail for persons convicted of vehicular homicide, conflicts with § 18–3–106(1)(b)(I), and the sentencing statute, § 18–1.3–401(1)(a)(IV)(A), which provide for a much longer sentence in the custody of the DOC. To resolve that conflict, we examine legislative history, prior law, the consequences of the proposed construction, and the goal of the statutory scheme. *See People v. Luther, supra.*

By enacting Senate Bill 01S2–008, the General Assembly has provided persuasive evidence of its intent concerning the interpretation of § 42–4–1301(9)(a)(II), making it clear that Senate Bill 01–168 was not intended to modify the penalties for vehicular homicide. *See People v. Holland,* 708 P.2d 119 (Colo. 1985)(while subsequent legislative declarations concerning the intent of an earlier statute are not controlling, they are entitled to significant weight); *BQP Indus., Inc. v. State Bd. of Equalization,* 694 P.2d 337 (Colo.App.1984)(noting that the same General Assembly enacted both provisions at issue there, and holding that, while subsequent legislative pronouncement of intent is not a part of the legislative history, such statements may be considered in construing the statute in question); *cf. State v. Nieto,* 993 P.2d 493 (Colo.2000)(courts cannot infer the intent of an earlier legislature from the views of a subsequent one).

Moreover, before § 42–4–1301(9) was amended by Senate Bill 01–168, it provided *additional* penalties for persons who had been convicted of multiple alcohol-related offenses. It would be incongruous to interpret the amendment to *decrease* penalties, as defendant asserts.

In addition, § 42–4–1301 classifies as misdemeanors the enumerated crimes of driving under the influence of alcohol or drugs and driving while ability impaired. *See* § 42–4–1301(1)(a)(c). And § 42–4–1301(9)(a)(I) defines various punishments for "[e]very person

who is convicted of a violation of [§ 42–4–1301(1)(a) or (c) or (2)(a) ]." The references in § 42–4–1301(9)(a)(II), (a)(IV), (b)(II), and (b)(IV) to "an offender" are specific references to a person who has been convicted under § 42–4–1301(1)(a) or (c) or (2)(a) and is therefore guilty of a misdemeanor. Further, the penalties set forth in § 42–4–1301(9) involve fines and detention in a county jail and, thus, are consistent with misdemeanor convictions, not felony convictions.

 Here, defendant was not convicted of a misdemeanor under either § 42–4–1301(1) or (2). He was convicted of a class three felony under § 18–3–106(b)(1). And the amendment that defendant relies upon does not purport to change the felony classification of that crime.

Defendant acknowledges that his proposed interpretation of the Senate Bill 01–168 version of § 42–4–1301(9)(a)(II) would lead to an absurd result, and is only plausible when that paragraph is read in isolation. Such a construction would require us to ignore the balance of the statute and would render meaningless the designation of vehicular homicide as a felony. We reject such a construction. *See Martin v. People,* 27 P.3d 846, 851 (Colo. 2001); *People v. Dist. Court, supra.*

Furthermore, defendant does not advance any reason for the amending language of Senate Bill 01–168, if it were interpreted as he suggests. Nor does he identify any reason the General Assembly would have had for placing the penalty for felony vehicular homicide in the traffic statutes applicable to misdemeanors.

We reject defendant's contention that the rule of lenity should be applied here. That rule, which requires construction of ambiguous statutes in favor of defendants in criminal cases, applies only if legislative intent cannot be discerned using other aids to statutory interpretation. *See People v. Pierrie,* 30 P.3d 816 (Colo.App.2001).

We also reject defendant's contention that the penalty described in Senate Bill 01–168 is the more specific provision and thus should prevail over the general sentencing provisions of § 18–1.3–401. The rule of statutory construction providing that a specific provision prevails over a general one does not

apply unless the statutes conflict irreconcilably. *See People v. Cooper,* 27 P.3d 348 (Colo.2001). We find no such conflict.

We also disagree with defendant's contention that this interpretation violates the prohibition against ex post facto legislation.

 When a law makes the punishment for a crime more onerous than it was when the crime was committed, the law violates the constitutional prohibition against ex post facto laws. *People v. Woodward,* 11 P.3d 1090 (Colo.2000). Here, however, under our interpretation, the penalties for vehicular homicide were not changed.

For similar reasons, we reject defendant's equal protection challenge in which he asserts that our interpretation would result in disparate penalties for the same conduct. There was only one statutory penalty in effect at the time of defendant's offense under our interpretation. *See People v. Young,* 859 P.2d 814 (Colo.1993)(equal protection prohibits punishment of identical conduct with disparate penalties).

Accordingly, we perceive no error in the trial court's decision to sentence defendant to six years in the custody of the DOC.

The sentence is affirmed.

Judge TAUBMAN and Judge NIETO concur.