**Joseph EDWARDS, Petitioner.**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 07SC279.

Supreme Court of Colorado, En Banc.

Dec. 2, 2008.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Melissa D. Allen, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## Introduction

In this case we review the court of appeals' decision in *People v. Edwards,* 165 P.3d 904 (Colo.App.2007).[1] In that case, the court of appeals dismissed as moot Petitioner Joseph Edwards' request to have his presentence confinement credit ("PSCC") applied to the mandatory parole portion of his sentence. That court held that because Edwards was serving mandatory parole at the time of his appeal, rather than the confinement portion of his sentence, Colorado's PSCC statute did not apply. *Edwards,* 165 P.3d at 906–07.

■ We reverse. We hold that an offender who has earned PSCC is entitled to have that credit deducted from his mandatory parole. Contrary to the court of appeals' conclusion, the term "sentence" as used in the PSCC statute, section 18–1.3–405, C.R.S. (2008), refers to the mandatory parole portion of a defendant's sentence, as well as the confinement portion of that sentence. We rely upon the rationale of our case *People v. Norton,* 63 P.3d 339 (Colo.2003), which interpreted the word "sentence" as used in the fourth sentence of the PSCC statute to include the mandatory parole portion of an offender's sentence in addition to incarceration. We construe the word "sentence" as used in the first three sentences of section 405, the PSCC statute, to have the same meaning.

We vacate the court of appeals' judgment holding Edwards' appeal moot. The case is returned to that court to decide the issue Edwards raised on appeal: whether the trial court correctly determined that the forty-nine additional days of PSCC he sought were already credited to his concurrent sentence.

## Background

To place this case in context, we briefly review the statutory mandate that the sentencing court must follow when it determines the number of days of PSCC that an offender must receive, and we review our precedent, *Norton,* which construes part of this same statute.

PSCC refers to the time credit a person earns when that person is in jail, unable to post bond, and awaiting sentencing on an offense. Under Colorado's PSCC statute, section 18–1.3–405, the number of days that an offender spends in jail before sentencing is deducted from the offender's "sentence." The first three sentences of section 405 prescribe the manner in which PSCC must be calculated and deducted from an offender's sentence: at the time the defendant is sentenced to incarceration and mandatory parole, the trial court must calculate the total number of days the defendant has spent in confinement before sentencing and then note this number on the offender's mittimus. It then becomes the statutory obligation of the Department of Corrections ("DOC") to deduct the number of days of PSCC noted on the mittimus from the offender's "sentence."

> A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her *sentence* for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the *sentence* by the department of corrections.

§ 18–1.3–405 (emphasis added).

In most cases, PSCC will be applied to the incarceration portion of an offender's sentence because the correct amount of PSCC to which the offender is entitled will be noted on the original mittimus issued when the offender is remanded to DOC custody. If there is an alleged error in the trial court's

---

1. We granted certiorari review of the following issue:

> Whether a criminal defendant who is owed presentence confinement credit, but has com-

pleted the confinement portion of his sentence, is entitled to have that credit applied to his mandatory parole.

calculation of PSCC, that error will usually be promptly brought to the sentencing court's attention, often on motion by defense counsel. Thus, as a practical matter, when a recalculation of PSCC is necessary, the additional PSCC awarded to the offender will usually be deducted from the incarceration portion of an offender's sentence because the error will be corrected relatively soon after the offender is remanded to DOC custody.

Unlike the typical scenario, this case represents a rare sequence of events involving sentence, award of PSCC, and the effort to correct the award. Edwards did not challenge the trial court's original calculation of his PSCC until halfway through his DOC sentence. The trial court did not conduct a hearing to address this alleged error until Edwards was only months away from release from incarceration to mandatory parole. While Edwards' appeal of the trial court's denial of his request for additional PSCC was pending, he was released from the confinement portion of his sentence and began serving mandatory parole. Hence, in this unique case, we must determine whether an award of additional PSCC to an offender who was released from incarceration and is serving mandatory parole may be applied toward the offender's mandatory parole term or whether, because he is no longer incarcerated, he has lost his claimed PSCC. In other words, we must determine whether the "sentence" from which the first three sentences of the statute direct that PSCC be deducted includes an offender's mandatory parole term.

While the first three sentences of the PSCC statute instruct the trial court and DOC on the calculation and application of PSCC, the fourth sentence of the statute addresses a narrow, discrete situation: it explains how PSCC earned by an offender who reoffends while he is already serving a sentence of confinement or mandatory parole should be applied. That sentence requires that, while the offender is confined and awaiting sentencing on the new offense or revocation of his parole, PSCC so earned must be deducted from the sentence the offender is serving at the time he reoffends, and not the sentence imposed by the trial court for the new offense.

If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the *sentence* for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the *sentence* the defendant is currently serving for the previous offense and shall not be granted against the *sentence* for the new offense.

§ 18–1.3–405 (emphasis added).

In *Norton*, an offender who was on parole reoffended and was confined in county jail pending revocation of his parole and sentencing on the new offense committed while on parole. 63 P.3d at 342. Upon revocation of his parole, he had to be reincarcerated for the period of his mandatory parole term. *Id.* Faced with the question of whether PSCC should be deducted from this period of mandatory parole or from the sentence on the new criminal charge, we construed the word "sentence," as used in this fourth sentence of the PSCC statute, to include an offender's mandatory parole term. *Id.* at 343–46. We held, therefore, that the language of the fourth sentence requires that PSCC be deducted from the offender's mandatory parole term and not from the sentence for the new offense. *Id.* at 350. Here, because Edwards did not reoffend while incarcerated or on parole, the fourth sentence of the PSCC statute is inapplicable. Hence, we must determine if our interpretation in *Norton* of the word "sentence" in the fourth sentence of the statute can be applied to the first three sentences of that same statute.

### Facts and Proceedings Below

In 1994, Joseph Edwards was convicted of aggravated robbery and conspiracy to commit aggravated robbery. He was sentenced to ten years in the DOC on the aggravated robbery conviction and a concurrent term of six years on the conspiracy conviction. The trial court awarded Edwards nineteen days of PSCC.

In 2000, Edwards filed a pro se motion for post-conviction relief pursuant to Crim. P. 35(c), asserting, inter alia, ineffective assistance of counsel as the basis of this claim.

The hearing on Edwards' motion did not take place until 2005. Initially, the trial court appointed counsel to represent Edwards, but this counsel failed to take any action. Alternative counsel was eventually appointed, but by the time the hearing was held, Edwards was nearing the end of the incarceration portion of his sentence.

At the hearing on the Rule 35(c) motion, Edwards and his counsel argued that Edwards' PSCC was incorrectly stated on the mittimus and that this was one of the errors Edwards' trial counsel should have raised with the trial court. The mittimus, issued April 17, 1995, awarded Edwards nineteen days of PSCC. Edwards argued that he was entitled to sixty-eight days total, forty-nine more than were credited on the original mittimus. Edwards' Rule 35(c) motion was denied without mention of PSCC in the trial court's order.

Later in 2005, Edwards filed a motion to correct his mittimus pursuant to Crim. P. 36,[2] which the trial court also denied without a hearing. Edwards filed a motion for reconsideration of the denial of the Rule 36 motion. The court again denied this motion, ruling that Edwards had already been awarded the forty-nine days of PSCC he was seeking on a concurrent sentence.

Edwards appealed the trial court's denial of his Rule 36 motion. During the pendency of his appeal, Edwards was released from the confinement portion of his sentence and began serving mandatory parole. The court of appeals dismissed Edwards' Rule 36 claim as moot. *Edwards*, 165 P.3d at 906. The court of appeals reasoned that, under Colorado's PSCC statute, section 18–1.3–405, PSCC may be deducted only from a "period of confinement." *Id.* Because Edwards had already completed the confinement portion of his sentence "there is no period of confinement from which to deduct any additional presentence confinement." *Id.* Edwards then petitioned this court for certiorari review.

**Analysis**

We granted certiorari in this case to address the question of whether an offender who is owed PSCC, but has completed the confinement portion of his sentence, is entitled to have that credit deducted from his mandatory parole. We answer this question in the affirmative.

**I.**

To determine the meaning of the word "sentence" as used in the first three sentences of section 405, Colorado's PSCC statute, we look first to the language of the statute itself. There are two operative terms in the statute: "confinement" and "sentence." "Confinement" describes how or under what conditions PSCC is earned, while "sentence" describes what PSCC "shall be deducted from."

> A person who is *confined for an offense prior to the imposition of sentence* for said offense is entitled to credit against the term of his or her *sentence* for the entire period of *such confinement.* At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the *sentence* by the department of corrections. If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the *sentence* for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the *sentence* the defendant is currently serving for the previous offense and shall not be granted against the *sentence* for the new offense.

§ 18–1.3–405 (emphasis added).

The court of appeals construed section 405 as requiring that the only "sentence" from which PSCC may be deducted is the incarceration portion of the offender's sentence.

---

**2.** Crim. P. 36 provides a means by which "[c]lerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission" may be corrected by the trial court. Unlike a Crim. P. 35(c) motion, there are no time limits on when a Crim. P. 36 motion may be brought.

165 P.3d at 906. It reached this conclusion by interpreting the phrase "period of such confinement" as referring to the word "sentence," rather than the phrase "confined for an offense prior to the imposition of sentence for said offense." *Id.* That is, the court read "confinement" as describing the "sentence" from which PSCC may be deducted, rather than the manner in which PSCC is earned. *Id.*

A plain reading of the first sentence indicates that this interpretation is in error. The word "such" in the phrase "period of such confinement" refers to the prior instance of "confinement" in the sentence: "confined for an offense prior to the imposition of sentence for said offense." As used here, the word "such" refers to the "person or thing mentioned or implied." *Webster's New World College Dictionary* 1337 (3d ed.1996) (defining 'such'). Because "such" modifies the word "confinement," it points the reader to the earlier instance of "confinement" in the statute. The phrase "confined for an offense prior to the imposition of sentence for said offense," describes the manner in which PSCC is earned (through confinement before sentencing), not the "sentence" from which PSCC is deducted. Hence, "confinement" is a predicate for earning PSCC; "confinement" does not describe the "sentence" from which PSCC shall be deducted.

In addition, as we point out in greater detail below, the court of appeals' interpretation of the word "sentence" is inconsistent with our accepted construction of the fourth sentence of section 405 as articulated in *Norton,* that PSCC *may* be deducted from a mandatory parole term. 63 P.3d at 350. Thus, if we accepted the court of appeals' interpretation of the first three sentences of section 405, the word "sentence" would mean different things in different parts of the same statute. In the first three sentences, "sentence" would refer only to incarceration, but in the fourth sentence, the word would include both incarceration and mandatory parole.

We thus conclude that "confinement" does not describe the "sentence" from which PSCC may be deducted, and we turn to the meaning of the word "sentence" as it is used in the first three sentences of the PSCC statute.

## II.

The People argue that the word "sentence" as used in the first three sentences of the PSCC statute refers only to the incarceration portion of an offender's sentence and not the mandatory parole portion of the sentence. Hence, once an offender is released to mandatory parole, the PSCC statute no longer applies, and the offender is not entitled to receive any previously unrecognized PSCC applied toward his mandatory parole term.

The People support this argument in two ways: (1) *Norton* should not guide our decision in this case because *Norton* is factually distinguishable from the present case; and (2) the word "sentence" as used in the first three sentences of section 405 must refer only to incarceration because, if a trial court credited PSCC against an offender's mandatory parole term, the court would impermissibly "impact" the terms of the offender's parole in violation of both section 17–22.5–403(1), C.R.S. (2008), which reserves exclusive authority over parole terms to the parole board, and our decision in *People v. Luther,* 58 P.3d 1013, 1016 (Colo.2002), in which we emphasized that a trial court lacks authority to affect the terms of an offender's mandatory parole. We address these arguments below.

### A.

In *Norton,* we similarly focused on the meaning of "sentence" as used in section 18–1.3–405. 63 P.3d at 343–44. Although *Norton* interpreted the meaning of "sentence" as used in the fourth sentence of that statute, *id.,* while here we are concerned with its first three sentences, *Norton's* interpretation is instructive. In that case, we determined that mandatory parole was intended to be included in the scope of an offender's "sentence" when the sentencing scheme was amended in 1993. 63 P.3d at 344. Examining the plain language of the statute, we reasoned that "[a]lthough not served within the confines of an institution, parole is nevertheless a clear

infringement on an offender's liberty." *Id.* We cited *Black's Law Dictionary* to support this conclusion: "'sentence' is defined as '[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer.'" *Id.* (internal citations omitted). We stated that, "[a]lthough the period of mandatory parole is predetermined, it is nevertheless part of 'the punishment imposed on a criminal wrongdoer.'" *Id.*

As we noted in *Norton,* our precedent also supports the conclusion that "the term 'sentence' incorporates both the incarceration component and the mandatory parole component of an offender's penalty." *Id.* (citing *Luther,* 58 P.3d at 1015) ("The penalties for felony offenders under [the 1993 sentencing] scheme include both an incarceration component and a mandatory parole component."); *see also Craig v. People,* 986 P.2d 951, 961 (Colo.1999) ("[T]erms of imprisonment and mandatory parole terms are distinct elements of the sentencing regime."). Indeed, on only two occasions has this court held that "sentence," as used in a Colorado statute, refers exclusively to the confinement portion of an offender's sentence. *Martin v. People,* 27 P.3d 846, 859–60 (Colo.2001); *People v. Johnson,* 13 P.3d 309, 314 (Colo.2000). Both of those cases involved different statutes than the one at issue here, and in both cases we explicitly noted that the context in which the word "sentence" occurred compelled this disparate interpretation. *See Norton,* 63 P.3d at 346–47 (discussing *Martin* and *Johnson* and noting that both cases dealt with statutes that specifically referred only to that component of an offender's sentence which the trial had discretion to impose, i.e., incarceration).

Additionally, we note that the conclusion we reached in *Norton* is strongly supported by a straightforward reading of the statutory language itself: "If a defendant ... is on parole for a previous offense when he or she commits a new offense ... the credit given for presentence confinement under this section shall be granted against the *sentence the defendant is currently serving* for the previous offense." § 18–1.3–405 (emphasis added). When a defendant is on parole at the time of reincarceration, the phrase "sentence the defendant is currently serving" can refer to only one thing: parole. Thus, the statute explicitly describes parole as the defendant's "sentence" and directs that PSCC earned through confinement prior to sentencing on a new charge be deducted from the defendant's parole term.

**B.**

The People argue that *Norton* is factually distinguishable from the present case. They argue that *Norton* held that PSCC is applied against an offender's parole term only where the PSCC is earned as a result of being reincarcerated on a parole violation prior to revocation of parole. Because this case does not involve the application of PSCC earned through confinement prior to revocation of parole, but rather PSCC earned through confinement prior to sentencing on the charges for which Edwards was initially incarcerated, the People claim that *Norton* does not apply. In other words, because we are interpreting the first three sentences of section 18–1.3–405, and not the fourth sentence, as we did in *Norton,* the People argue that *Norton* is inapplicable.

In effect, the People ask us to construe the word "sentence" in the fourth sentence as having a different meaning than the word "sentence" as used in the first, second, and third sentences of the statute. Under their interpretation, the word "sentence" in the first three sentences of section 405 refers to an offender's period of incarceration only, but the very same word, "sentence," includes an offender's mandatory parole term when it is used in the fourth sentence of the same statute. We have held that "[i]n order to avoid interpreting the statute in a way that defeats legislative intent, we must ... read the provisions as a whole, construing each consistently and in harmony with the overall statutory design, if possible." *People v. Cross,* 127 P.3d 71, 74 (Colo.2006). Our duty to construe the words and provisions of statutes so as to maintain internal consistency and harmony of meaning militates against the People's proffered reading of section 18–1.3–405.

Nevertheless, the People suggest that we should accept their construction of the word "sentence" because to do otherwise would "result in a court or DOC interfering with the Parole Board's exclusive authority to impact the terms of [a defendant's mandatory parole]," (Resp.'s Br. at 19), and would be at odds with our holding in *Luther,* 58 P.3d at 1016. We disagree.

In *Luther,* we addressed the question of whether a defendant's reincarceration as the result of parole revocation is a sentence "imposed by the court." *Id.* at 1017. We reasoned that it was not because, under Colorado law, "the trial court lacked authority to impact the terms of [the defendant's] parole, or the penalties for violation of that parole." *Id.* at 1016. Instead, the General Assembly reserved to the parole board "the exclusive authority to grant ... [and to] continue, modify, or revoke parole if the offender violates the terms and conditions of that parole." *Id.* (citing §§ 17–22.5–403(1), (8)(a), C.R.S. (2002) ). Hence, the People argue that by applying Edwards' PSCC to his mandatory parole term, the trial court shortens the period of his mandatory parole, thus "impacting parole" in contravention of section 17–22.5–403(1), which reserves exclusive authority over parole terms to the parole board.

■ However, the mechanism by which section 18–1.3–405 applies PSCC to the parole portion of an offender's sentence does not impermissibly allow a trial court to impact parole. Under that statute, the trial court "shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus." "[T]he only judicial function [under the statute] is to make a finding of fact concerning the number of days spent by a defendant in presentence confinement." *Meredith v. Zavaras,* 954 P.2d 597, 605 (Colo. 1998) (quoting *People v. Dempsey,* 624 P.2d 374, 375 (Colo.App.1981)). A sentencing court does not have discretion to grant or deny PSCC; it simply notes whether a defendant is entitled to PSCC and, if he is,

enters the amount on the mittimus. *Beecroft v. People,* 874 P.2d 1041, 1045 n. 12 (Colo. 1994). Instead, it is the *DOC,* not the trial court, which applies PSCC calculated by the court to the defendant's sentence. § 18–1.3–405 ("Such period of confinement shall be deducted from the sentence by the department of corrections."). Although awarding Edwards PSCC will undoubtedly shorten his parole term, it is the DOC that will shorten it, not the trial court.

■ The People acknowledge that, before the court of appeals' decision was published, the DOC applied PSCC to a sentence irrespective of whether an offender had already been paroled or had just been sentenced.[3] For offenders already on parole at the time PSCC was included on the mittimus, the DOC would adjust the mandatory release date by the amount of PSCC, which would effectively reduce the amount of parole time remaining. This process does not interfere with the parole board's statutory authority because the parole board has authorized the DOC, by agency rule, to compute time served "on any sentence." 8 Colo.Code Regs. § 1503–1 (2008). Accordingly, by making a finding of the amount of PSCC, a trial court does not interfere with the parole board's authority, because it is the DOC, by authority of the parole board, that applies credit to the parole portion of a sentence. Hence, the procedures for applying PSCC to an offender's parole term followed by the DOC prior to the publication of the court of appeals' opinion in this case were correct and should continue to be followed.

### Conclusion

For the foregoing reasons the court of appeals' order dismissing this case as moot is vacated, and the case is returned to the court of appeals for proceedings consistent with this opinion. From the record it appears that the only remaining issue to be resolved in this case is whether the forty-nine additional days of PSCC sought by Edwards were already credited to his concurrent sentence. On remand, the court of appeals will

---

**3.** According to the People's brief, their attorneys interviewed Mary Carlson, Manager of Time/Release Operations at the DOC. The People relayed the substance of this interview in its answer brief to this court.

be required to make this factual determination.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

Although a remand for consideration of the question whether the defendant was erroneously deprived of 49 days of presentence confinement credit seems harmless enough, I fear the rationale of the majority opinion is capable of making considerable mischief. Because I also consider the majority's analysis misguided and its ultimate conclusion a mistake, I respectfully dissent.

While the majority's explanation of our sentencing scheme strikes me as oversimplified and its decision to construe the word "sentence," once more, in one more context, as problematic, I do not see how there can still be any serious disagreement that a statutorily imposed period of parole is one component of a convicted felon's sentence. *See People v. Norton,* 63 P.3d 339, 344 (Colo. 2003). To my mind, however, that is hardly the point. In my opinion, the significant question is not whether a parole term is part of the defendant's sentence, but whether a prison term and a statutorily mandated period of parole are fungible.

Until our parole system was revamped in 1993, this may at least have been an arguable proposition, but under the current regime, that is no longer the case. While parole supervision in this state had previously amounted to nothing more than an alternate method of serving a sentence to incarceration, that conceptual framework was abandoned, in favor of parole terms that are separate and distinct from terms of confinement. *See Craig v. People,* 986 P.2d 951, 958 (Colo.1999); *see also Martin v. People,* 27 P.3d 846, 850 (Colo.2001). At least in part to ensure that all felons continue to be supervised for an appropriate period of time following their release from prison, whether they were released with time remaining on their prison sentences or not, *see* Hearing on H.B. 93–1302 Before the House Judiciary Committee, 59th General Assembly, 1st Reg. Sess. (Feb. 16, 1993), the legislature created mandatory periods of parole, graduated according to the seriousness of the conviction and no longer subject to the sentencing discretion of the courts. *See* § 18–1.3–401(1)(a)(V), C.R.S. (2008).

Although a punitive sentence to confinement and a period of parole supervision are both measured in terms of time, they exist for substantially different purposes and are no more interchangeable than would be, for example, a prison term and a fine. Nor have we suggested anything to the contrary. In *Norton,* 63 P.3d 339, we credited a parolee's presentence confinement, following his arrest on a new charge, against the prison term he would be obliged to serve upon revocation of his parole. We there described this new period of confinement in terms of "the parole component of his previous offense," *id.* at 348, for the reason that the applicable statute required the conversion of his parole term "into an additional period of imprisonment of up to the remaining length of the parole period," *Craig* at 963, but we nowhere suggested that parole itself and prison terms are interchangeable.

Presumably, any challenge to the legality of a prison sentence, after the defendant has been released to parole supervision, will now be an acceptable procedure for seeking reduction of his parole term. For anything that appears in the majority's opinion, this will be the case, whether the defendant had already served his entire term of confinement or was released at the discretion of the parole board after merely becoming eligible for parole. Because I believe this result not only thwarts the legislature's intent in creating our current parole scheme, but also invites abuses of the process, I respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.