The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

Gary **TORKELSON**, Defendant–Appellant.

No. 96CA0087.

Colorado Court of Appeals,
Division II.

Nov. 24, 2000.

As Modified on Denial of
Rehearing March 29, 2001.

Ken Salazar, Attorney General, M. Catherine Duba, Hugo Teufel, Assistant Attorneys General, Denver, CO, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

In this appeal by defendant, Gary Torkelson, the threshold issue is whether the county court judge who accepted the jury's verdict had jurisdiction to do so in the absence of the assigned district court judge. We conclude that he did not, reverse defendant's conviction, and remand for a new trial.

In July 1997, defendant directly appealed his conviction entered upon a jury verdict finding him guilty of sexual assault on a child by one in a position of trust. In his appeal, defendant asserted that his conviction should be reversed because neither the chief judge of the judicial district nor the district court administrator delegated to the county court judge the responsibility of reading the verdict, polling the jurors, accepting the verdict, and discharging the jury. Defendant asserted that the appointment of the county court judge by the presiding district court judge was improper, thus making the verdict void for lack of judicial authority. *See People v. Torkelson,* 971 P.2d 660 (Colo.App.1998).

In an earlier opinion, this division concluded that "a judgment entered following [the taking of the verdict and the polling of the jury] by a county court judge acting without authority is void and must be reversed." *People v. Torkelson, supra,* 971 P.2d at 662. Accordingly, we held that if the county court judge here was not assigned to defendant's case pursuant to constitution, statute, or chief justice directive, the county court judge's actions as a district court judge would be *coram non judice* and the judgment void. However, because the record lacked sufficient evidence to determine the authority under which the county court judge acted when he took the verdict, the division remanded the case for further proceedings. This court instructed that if the trial court found that the county court judge was acting without jurisdiction, it should reverse defendant's conviction and order a new trial. If, however, the trial court determined that the county court judge's appointment was proper, the record and judgment were to be recertified to this court for consideration of defendant's remaining contentions.

On remand, following a hearing, the trial court found there was no written, direct order pursuant to Chief Justice Directive 95–01 granting the county court judge the authority to preside as a district court judge in this matter. The trial court also found that the judicial administrator of the district had not been contacted to make a special appointment of the county court judge to preside in this matter, but added that, if such contact had been made, the county court judge would have been appointed by the judicial district administrator.

The court concluded that the failure to call the district court administrator was a technical error on an administrative matter. Therefore, because there had been substantial compliance with Chief Justice Directive 95–01, it ruled that it would be unconscionable to deny the jury the right to its verdict. The trial court concluded that the county court judge's appointment was proper, and recertified the record and judgment of conviction.

Defendant has again appealed concerning the jurisdictional issue, and the parties have submitted supplemental briefs.

■ Defendant asserts that, based on our earlier opinion, the trial court erred in concluding that the county court judge's appointment was proper. In contrast, the People argue that reversal is not warranted because the county court judge performed only a ministerial task by accepting the verdict and because the parties did not object to the county court's judge's presence at the time of trial. In the alternative, the People argue that the county court judge had jurisdiction as a *de facto* judge. We agree with defendant.

■ As we noted in our earlier opinion, because defendant's assertion of error presents a jurisdictional question, it may be

raised at any time, even for the first time on appeal. *People v. Hinchman,* 196 Colo. 526, 589 P.2d 917 (1978). Similarly, we again note that if the judgment here is void, it must be set aside even if the defendant has not been prejudiced by this jurisdictional defect. *See Merchants Mortgage & Trust Corp. v. Jenkins,* 659 P.2d 690 (Colo.1983).

■ A *de facto* judge is one whose acts, though not those of a lawful officer, will be valid under circumstances where, although the officer is not appointed or elected, the parties involved acquiesce in his or her participation as a judge. *Butler v. Phillips,* 38 Colo. 378, 88 P. 480 (1906).

In Colorado, the cases in this area fall into two categories—those finding the court is without jurisdiction, and those applying the *de facto* judge doctrine. Under the first category, the supreme court has held that a judge acts without jurisdiction when he or she is not appointed pursuant to constitutional or statutory authority. *See Merchants Mortgage & Trust Corp. v. Jenkins, supra; Olmstead v. District Court,* 157 Colo. 326, 403 P.2d 442 (1965).

In *Merchants Mortgage,* a district court judge heard arguments in a case, but deferred his ruling. In the interim, he was appointed to the court of appeals. The judge later entered judgment against one of the parties in the district court case, and that party appealed, arguing that the judgment was void. The supreme court agreed, holding that: "[A]bsent constitutional or statutory authorization, a former district court judge does not have authority to act in a judicial capacity, and orders entered by such a person after he ceases to be a district court judge are void." *Merchants Mortgage & Trust Corp. v. Jenkins, supra,* 659 P.2d at 692.

The court in *Merchants* relied on *Olmstead.* In *Olmstead,* the supreme court held that an order is void when it is entered by a judge after the expiration of his or her term. *Olmstead v. District Court, supra.*

We distinguish these cases from those applying the *de facto* officer doctrine relied on by the People.

In *Butler v. Phillips, supra,* a county court judge was appointed pursuant to the charter of the city and county of Denver. More than a year later, the supreme court held that the provisions of the charter providing for the judge's appointment were unconstitutional. *See People v. Johnson,* 34 Colo. 143, 86 P. 233 (1905).

The court in *Butler* upheld the judge's acts as those of a *de facto* officer because although the judge had been appointed pursuant to an unconstitutional law, the law was not adjudged unconstitutional until after he had been presiding as a county court judge for more than a year.

Similarly, in *Relative Value Studies, Inc. v. McGraw–Hill Co.,* 981 P.2d 687 (Colo.App. 1999), a Denver district court judge granted summary judgment in a case after he no longer lived in the City and County of Denver. A division of this court recognized that, although the judge, in violation of the Colorado Constitution, had moved outside the district in which he was elected, he was a *de facto* judge because when he had entered the judgment he was still serving as a district court judge.

The *Relative Value* court properly distinguished *Merchants Mortgage & Trust Corp. v. Jenkins, supra,* and *Olmstead v. District Court, supra,* on the basis that, in the case before it, the judge was still a district court judge when he entered the order in dispute and was, therefore, acting with constitutional authority. Here, in contrast, the county court judge was not a district court judge when he accepted the verdict and had not been properly appointed to act as a district court judge.

Based upon our review of the above cases, we conclude that the county court judge here was not a *de facto* judge and, therefore, was acting without jurisdiction.

In both cases in which the appellate courts have found that a trial court judge's actions were void, it was clear that the trial court judge did not have authority at the time he engaged in the disputed actions. In *Merchants Mortgage,* the judge in question was no longer a district court judge, but a court of appeals judge, when he acted on district

court matters. Similarly, in *Olmstead,* a trial court judge acted after the expiration of his term.

In contrast, in *Butler,* the county court judge believed he was acting properly pursuant to the charter of the City and County of Denver; it was only when the validity of the charter provisions was successfully challenged that the authority of that county court judge to act was called into question. Similarly, in *Relative Value,* the Denver district court judge had been properly appointed when he engaged in the disputed action in question; it was only after his move outside of Denver became known that his authority to act was questioned.

Here, as in *Merchants Mortgage* and *Olmstead,* the county court judge had not been appointed properly pursuant to constitution, statute, or chief justice directive. Thus, even though it is likely that he would have been appointed to serve as an acting district court judge had the proper procedures been followed, such was not the case. Accordingly, we must conclude that the county court judge was acting without authority at the time that he accepted the verdict in this case.

Decisions of the United States Supreme Court and those of other state courts reinforce our conclusion that the county court judge here was acting without jurisdiction to proceed.

In *Ryder v. United States,* 515 U.S. 177, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995), a unanimous Supreme Court reversed the conviction of an enlisted member of the United States Coast Guard on the basis that two judges of the three-judge panel of the Coast Guard Court of Military Review had been appointed in violation of the appointments clause of the United States Constitution. Because the appointments clause of the Constitution requires such judges to be appointed by a president, a court of law, or a head of a department, the Supreme Court concluded that their appointment by the general counsel of the Department of Transportation was improper.

In its analysis, the Supreme Court rejected the government's argument that the *de facto* officer doctrine conferred validity upon the challenged judges because they were acting under color of official title. Distinguishing prior criminal cases in which the Supreme Court had held that the *de facto* judge doctrine applied, the *Ryder* Court found that the case before it involved a claim that there has been "a 'trespass upon the executive power of appointment,' . . . rather than a misapplication of a statute providing for the assignment of already appointed judges to serve in other districts." *Ryder v. United States, supra,* 515 U.S. at 182, 115 S.Ct. at 2035, 132 L.Ed.2d at 143. The Supreme Court rejected the contention that matters concerning the appointments clause could be read as merely dealing with etiquette or protocol, and emphasized that the appointments clause helps to preserve the Constitution's structural integrity by preventing the diffusion of the appointment power.

The *Ryder* court cited with approval the plurality decision in *Glidden Co. v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), which declined to invoke the *de facto* officer doctrine in order to avoid deciding a question arising under Article III of the Constitution. In *Glidden,* the Supreme Court considered the validity of appointments by the Chief Justice of the Supreme Court of an active judge of the Court of Claims and a retired judge of the Court of Customs and Patent Appeals to serve on panels of federal courts of appeal. The Court's plurality discussed the difference between jurisdictional challenges and the *de facto* judge doctrine. The *Glidden* court noted that earlier cases relying on the *de facto* officer doctrine did not involve basic constitutional protections designed in part for the benefit of litigants. Those cases raising constitutional questions, as well as cases based upon a strong policy concerning the proper administration of judicial business, should be reviewed as jurisdictional issues, the plurality declared. Accordingly, the plurality in *Glidden* found that the alleged defect of authority there related to basic constitutional protections designed in part for the protection of litigants.

A review of decisions from other states suggests that state courts have implicitly followed the factors set forth in *Glidden* and determined that a jurisdictional issue is presented when a challenge to a judge's authority is constitutionally based. However, when

such challenge is based only on a statute or rule, the *de facto* judge doctrine applies. *Compare Trammell v. State,* 785 So.2d 398 (Ala.Crim.App.2000) (judge who presided in case and sentencing in county in which he did not reside, in violation of constitutional and statutory requirements, acted without jurisdiction) *and Saylors v. State,* 836 S.W.2d 769 (Tex.App.1992) (special judge appointed for sentencing not in accordance with constitution and state statute acted without jurisdiction) *with Gates v. City of Tenakee Springs,* 954 P.2d 1035 (Alaska 1998) (*pro tempore* judge who sat on case in violation of state residency requirement acted as *de facto* judge and his actions were upheld); *People v. Blommaert,* 184 Ill.App.3d 1065, 133 Ill.Dec. 307, 541 N.E.2d 144 (1989) (holding it is not reversible error for a judge to leave the courtroom when he or she arranges for another judge to preside over the proceedings); *and Eagan v. State,* 480 N.E.2d 946 (Ind. 1985) (it is not error for judge *pro tempore* to accept jury verdict).

Similarly, here, the basic constitutional protection at issue is that which gives the chief justice authority to delegate his or her administrative powers to the chief judges of the judicial districts. *See* Colo. Const. art. VI, § 5(4) ("The chief justice shall appoint from district judges of each judicial district a chief judge to serve at the pleasure of the chief justice. . . . Each chief judge shall have and exercise such administrative powers over all judges of all courts within his district as may be delegated to him by the chief justice.") *See also* Colo. Const. art. VI, § 17 (county courts do not have jurisdiction of felonies).

Pursuant to the Colorado Constitution, the chief justice assigned her authority of appointment to the chief judges of the judicial districts and also authorized them to delegate their administrative responsibilities to the district administrators. Chief Justice Directive 95–01. Pursuant to this chief justice directive, the chief judge of the judicial district may authorize the district administrator to appoint county court judges to serve as district court judges.

We conclude that the issue presented here, as in *Glidden v. Zdanok, supra,* concerns both a nonfrivolous constitutional question and a strong policy regarding the proper administration of judicial business. Although the appointment of the county court judge here, not in accordance with statutory, constitutional, or chief justice directive provisions, may be regarded by some as a technical defect, at bottom, it concerns the fundamental interest of litigants in ensuring that "qualified county court judges" will be called upon to serve as acting district court judges "when necessary and when funds are available." *See* Chief Justice Directive 95–01.

This consideration leads us to adhere to our prior decision and conclude that the proper appointment of a county court judge to act as a district court judge presents a jurisdictional question. Therefore, the *de facto* judge doctrine does not apply, and the judgment cannot stand. Because of this disposition, we do not address the other issues raised by defendant.

Accordingly, the judgment of conviction is reversed and the cause is remanded for a new trial.

JONES and TURSI *, JJ., concur.