**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jeffery Allen LOVEALL, Defendant–Appellant.**

**No. 05CA2031.**

Colorado Court of Appeals, Div. I.

March 20, 2008.

Rehearing Denied May 8, 2008.

---

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Kathleen A. Lord, Chief Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Jeffery Allen Loveall, appeals the order revoking his sentence to probation and imposing a new sentence to prison. We reverse and remand with directions.

## I.  Background

Loveall entered an Internet chat room and sent sexually explicit messages to a deputy sheriff who was pretending to be a fourteen-year-old girl named Sarah. After exchanging photographs via email, Loveall invited "Sarah" to meet at a shopping mall so that they could go to a hotel for sex. When Loveall arrived for the meeting, he was arrested and charged with criminal offenses.

Loveall pled guilty to enticement of a child, a class four felony, and a misdemeanor offense that is not at issue in this appeal. He received a deferred sentence for enticement of a child.

In March 2003, the court revoked Loveall's deferred sentence and entered a conviction for enticement of a child. The court sentenced Loveall to probation for a term of ten years to life. Loveall did not appeal his conviction or sentence.

In 2004, the People filed a motion to revoke Loveall's probation. After conducting an evidentiary hearing, the court found that Loveall had violated conditions that required him to (1) avoid contact with children, (2) remain in sex offender treatment, and (3) maintain employment. The court revoked Loveall's probation and imposed an indeterminate prison sentence of two years to life.

Loveall now appeals the order revoking his probation. He challenges his underlying conviction and the revocation proceedings. We reject his attack on the conviction but agree that the order must be reversed for errors in the revocation hearing.

## II.  Attack on the Conviction

Loveall contends that the trial court should not have sentenced him to prison for enticement of a child because that conviction is invalid for two reasons:

1. A court cannot order a deferred sentence for enticement of a child. Therefore, Loveall's guilty plea was induced by the promise of an illegal sentence.

2. A court may order a deferred sentence only if the defendant is represented by counsel, and Loveall was pro se at all relevant times. Because the court lacked authority to order a deferred sentence in the first place, it necessarily lacked authority to revoke the deferred sentence and enter a conviction.

Because this is not a direct appeal from the judgment of conviction, Loveall's contentions are in the nature of a collateral attack and are subject to the three-year time limit set forth in section 16–5–402(1), C.R.S.2007. *See People v. Wiedemer,* 852 P.2d 424, 430 (Colo.1993) (for purposes of the time bar statute, a collateral attack includes a postconviction motion to set aside a judgment as well as a motion to suppress a conviction). Loveall could have presented these contentions to the trial court during the 2004 revocation proceeding or in a postconviction motion filed before March 2006 (three years from the date on which the court entered the judg-

ment of conviction). But Loveall did not present these contentions to the trial court.

Loveall argues that his contentions may be raised for the first time on appeal because they are based on assertions that the trial court acted without jurisdiction. *See People v. Heredia*, 122 P.3d 1041, 1043 (Colo.App. 2005) ("Jurisdictional issues may be raised at any time, including for the first time on appeal."). Assuming, without deciding, that Loveall's contentions present jurisdictional issues, we consider and reject them as follows.

### A. Deferred Sentences and the Lifetime Supervision Act

■ Loveall contends that the trial court lacked authority to order a deferred sentence because it was required to impose an indeterminate prison term under the Sex Offender Lifetime Supervision Act. He is incorrect.

When a defendant is sentenced for enticement of a child, the court must impose an indeterminate prison term under the Lifetime Supervision Act. *See* §§ 18–1.3–1003(5)(a)(VII), –1004(1)(a), C.R.S.2007. But this sentencing statute does not preclude a presentence remedy, such as a deferred sentence under section 18–1.3–102, C.R.S.2007. The legislature has recognized that a court may order a deferred sentence for enticement of a child. *See* § 18–3–305(3), C.R.S. 2007 (court must report a violation of enticement of a child when a school district employee "is convicted, pleads nolo contendere, *or receives a deferred sentence* for a violation of the provisions of this section" (emphasis added) ). Until the defendant is sentenced, the Lifetime Supervision Act does not apply.

### B. Deferred Sentences for Pro Se Defendants

■ Loveall also contends that a trial court may order a deferred sentence only if the defendant is represented by counsel. He relies on the following language in the deferred sentence statute:

In any case in which the defendant has entered a plea of guilty, the court accepting the plea has the power, *with the written consent of the defendant and his or her attorney of record* and the district attor-

ney, to continue the case for a period not to exceed four years from the date of entry of a plea to a felony. . . .

§ 18–1.3–102(1), C.R.S.2007 (emphasis added).

We reject this contention under the doctrine of constitutional doubt. *See Almendarez–Torres v. United States*, 523 U.S. 224, 237–38, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (doctrine of constitutional doubt requires that a statute "be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score" (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916)) ); *Fields v. Suthers*, 984 P.2d 1167, 1172 (Colo.1999) (recognizing the "duty to construe statutes in a way that does not raise constitutional concerns"). If interpreted as Loveall suggests, section 18–1.3–102 would prevent all pro se defendants from gaining the benefit of deferred sentences and thus would be of doubtful constitutionality under the provisions that guarantee equal protection and the right of self-representation. *See People v. Arguello*, 772 P.2d 87, 92 (Colo.1989) (right of self-representation is a corollary to the Sixth Amendment right to counsel) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).

We therefore conclude that section 18–1.3–102 requires the written consent of defense counsel only if the defendant is represented. Because Loveall was pro se at all relevant times, counsel's consent was not required.

■ Loveall has anticipated our conclusion and has advanced a subsidiary argument alleging flaws in his waiver of the right to counsel. We decline to address this argument because it was never presented to the trial court and does not implicate the court's jurisdiction. *Cf. People v. Gardner*, 55 P.3d 231, 235 (Colo.App.2002) (declining to address arguments raised for the first time in a postconviction appeal).

### III. Probation Revocation

Loveall next challenges the revocation proceedings. He contends that the trial court's

reliance on double and triple hearsay deprived him of his due process right to confront adverse witnesses. We agree.

## A. Due Process Requirements

■ A probationer has no Sixth Amendment right of confrontation in revocation hearings. *People v. Turley*, 109 P.3d 1025, 1026 (Colo.App.2004). Nevertheless, he or she is entitled to certain due process protections, including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (stating the minimum requirements of due process for parole revocations); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (applying the *Morrissey* standard to probation revocations). In Colorado, the probationer also must be given a "fair opportunity to rebut [the prosecution's] hearsay evidence." § 16–11–206(3), C.R.S.2007.

Divisions of this court appear to have differed on whether a trial court must find good cause before denying a probationer's right of confrontation. In *People in Interest of T.M.H.*, 821 P.2d 895, 896–97 (Colo.App.1991), and *People v. Thomas*, 42 Colo.App. 441, 443, 599 P.2d 957, 958 (1979), divisions reversed revocation orders where the evidence consisted entirely of hearsay and the trial court failed to find good cause to deny confrontation. More recently, however, divisions have suggested that a trial court need not find good cause if the alleged violation is something other than a new criminal offense. *See People v. Moses*, 64 P.3d 904, 908 (Colo. App.2002); *People v. Kelly*, 919 P.2d 866, 868 (Colo.App.1996); *see also People v. Manzanares*, 85 P.3d 604, 610 (Colo.App.2003) (appeal from revocation of deferred sentence).

■ To resolve this apparent tension, we have consulted decisions from other jurisdictions. And we conclude that the probationer's right of confrontation does not depend on the nature of the underlying allegation. All probationers have a right to confront adverse witnesses under the due process principles identified in *Morrissey*.

■ In determining whether there is good cause to deny confrontation, trial courts should consider whether the proffered hearsay evidence is reliable. If the evidence is substantially reliable, the court may deny confrontation for that reason alone. *See United States v. Kelley*, 446 F.3d 688, 692 (7th Cir.2006) (if the hearsay evidence "bears substantial guarantees of trustworthiness, then the need to show good cause vanishes" (quoting *Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir.1984))); *Reyes v. State*, 868 N.E.2d 438, 441–42 (Ind.2007) (adopting "substantial trustworthiness test" for determining whether hearsay may be admitted in a probation revocation proceeding).

■ Ideally, a trial court will explain on the record "why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing ... live witnesses." *Kelley*, 446 F.3d at 693; *see Reyes*, 868 N.E.2d at 442. But the court's failure to make findings may be overlooked if the reviewing court can determine that the hearsay is trustworthy. *Kelley*, 446 F.3d at 693.

Although we disagree with part of the rationale underlying *Moses, Kelley,* and *Manzanares,* we do not suggest that those decisions were incorrect. Those decisions may be consistent with the views that we have expressed because the divisions observed that the out-of-court statements were not hearsay, *see Manzanares,* 85 P.3d at 610; were admissible under a recognized hearsay exception, *see id.;* or were otherwise reliable, *see Moses,* 64 P.3d at 908 (lab reports analyzing probationer's urine samples).

## B. Evidence and Findings

The prosecution alleged that Loveall violated three conditions of probation. We detail the relevant evidence and findings here.

### 1. Contact

As one condition of probation, Loveall was required to avoid contact with children:

You shall have no contact with any child under the age of eighteen (18), including your own children, nor attempt contact except under circumstances approved in

advance and in writing by the probation officer in consultation with the community supervision team. Contact includes correspondence, written or verbal, telephone contact, or any communication through a third party.

As pertinent here, the prosecution alleged that Loveall violated this condition by visiting his wife at the hospital, the day after she had given birth to their son by emergency cesarean section, and "holding the baby."

In support of this allegation, the prosecution relied on double and triple hearsay presented through J.R., a probation officer who lacked personal knowledge of the alleged events. Loveall objected on hearsay and confrontation grounds and noted that the declarants had not been identified until the day of the hearing.

Loveall admitted that he had visited his wife at the hospital but denied holding the baby. He said that the baby was not in his wife's room when he arrived but was brought in after he had fallen asleep in a chair. Loveall's wife and wife's grandmother testified that Loveall did not hold the baby.

On this evidence, the trial court found that Loveall had committed the alleged violation by "being in the same room with the child and/or holding the child."

### 2. Treatment

Another condition required Loveall to remain in sex offender treatment:

> You shall attend and actively participate in a sex offender evaluation and treatment program approved by the probation officer. You will abide by the rules of the treatment program[ ] and the treatment contract and will successfully complete the program to the satisfaction of the probation officer and the treatment provider.

The prosecution alleged that Loveall violated this condition as follows: "The defendant was terminated from treatment on January 6, 2004, after it was learned that he had contact with his baby."

In support of this allegation, the prosecution relied on an unsigned letter from the treatment provider. The letter contained various background statements, including that Loveall had been "angry and resistive" about having to avoid his baby. And it contained these assertions of material fact: "It has come to our attention that Mr. Loveall is not in compliance with this restriction. Effective 1/6/04 Mr. Loveall is terminated as a client of Canon City Counseling, Inc."

On this evidence, the court found that Loveall "was terminated as a result of contact with the child."

### 3. Employment

Loveall was also required to find a job and make payments:

> You will pay the victim compensation fund, victims assistance fund, restitution, fees, costs, surcharges, and fines in the amounts and manner ordered by the court. You will maintain lawful employment with earnings sufficient to pay the amounts ordered by the court, and not terminate that employment without the consent of the probation officer.

The prosecution alleged that Loveall had "not maintained gainful employment."

Loveall testified that he had made substantial efforts to find work, and he presented records of his unsuccessful job applications. But he admitted that he had not found a job.

The trial court found that Loveall had failed to maintain employment.

### C. Due Process Violation

We conclude that Loveall was deprived of his due process right of confrontation during the revocation hearing. Our conclusion rests on three observations:

1. The trial court did not find that there was good cause to deny confrontation or find that the prosecution's hearsay evidence was substantially reliable.

2. Our review indicates that the hearsay evidence was unreliable. Much of the testimony consisted of double and triple hearsay. The statements did not fall within a recognized hearsay exception. *See People v. Thomas,* 42 Colo. App. at 443, 599 P.2d at 958. They also lacked meaningful detail and con-

tained material inconsistencies. *See Egerstaffer v. Israel,* 726 F.2d at 1235.

3. Because the prosecution did not disclose the declarants' identities until the day of the hearing, Loveall could not test the reliability of the evidence. *See Singletary v. Reilly,* 452 F.3d 868, 874–75 (D.C.Cir.2006) (revocation order reversed where the identities of the hearsay declarants were not "revealed for purposes of evaluating their credibility"). Therefore, even though Loveall was able to call witnesses and testify on his own behalf, he was deprived of a "fair opportunity to rebut [the] hearsay evidence," in violation of section 16–11–206(3).

### D. Effect of Violation

Loveall admitted that he had failed to maintain employment. Therefore, the court's findings are, to some degree, supported by evidence independent of any due process violation. *See People v. Howell,* 64 P.3d 894, 897 (Colo.App.2002) (assuming, without deciding, that the court violated the probationer's due process right of confrontation, reversal was not required where other evidence established the alleged violation).

Nevertheless, we conclude that Loveall is entitled to a new hearing. Without the hearsay evidence, the trial court could not have found that Loveall knowingly violated the "no contact" condition. Nor could it have determined that Loveall was terminated from sex offender treatment for a legitimate reason. And we cannot conclude that the court would have revoked Loveall's probation in the absence of those determinations. *See State v. Ojeda,* 159 Ariz. 560, 769 P.2d 1006, 1008 (1989) ("[W]hen one or more, but not all, of the findings of probation violation are set aside on appeal, the order of revocation and the sentence should be set aside and the case remanded to the trial court for a new disposition hearing unless the record clearly shows the trial judge would have made the same disposition even without consideration of the violations set aside on appeal."); *see also Brundridge v. Bd. of Parole & Post Prison Supervision,* 192 Or.App. 648, 87 P.3d 703, 707 (2004).

We therefore reverse the order and remand for further proceedings.

### E. Directions on Remand

On remand, the trial court may conduct a new evidentiary hearing to determine whether Loveall committed the alleged violations. Alternatively, the court may convene a hearing to determine whether to revoke Loveall's probation solely because he failed to maintain employment. Either determination is subject to appellate review.

Loveall argues that the court's revocation order constitutes an abuse of discretion for additional reasons. He asserts that the "no contact" condition is unconstitutional when applied to the act of visiting his wife and infant son at the hospital. And he presents other arguments about the propriety of revocation for failure to remain in treatment and maintain employment. In light of our decision to reverse the revocation order, we need not address these arguments. Loveall may present these and other arguments on remand.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge MÁRQUEZ and Judge ROMÁN concur.