24CA0031 Peo v Cardenas 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0031
Mesa County District Court No. 11CR813
Honorable Richard T. Gurley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jaime Sahagun Cardenas,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE FOX
J. Jones and Dunn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

James West, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jaime Sahagun Cardenas, appeals the district court's order granting him 1,593 days of presentence confinement credit (PSCC).  We affirm.

## I.     Background

¶ 2     In 2011, police sought a warrant to arrest Cardenas for various charges related to a July 2011 crime spree in Grand Junction.  However, police failed to apprehend Cardenas and only discovered his whereabouts in 2014 when the Mesa County District Attorney's Office (DA) learned he was incarcerated in Mexico.

¶ 3     The record is unclear as to Cardenas's criminal history in Mexico.  An email from a United States government employee stated that Cardenas was incarcerated "in approximately March 2012" with a sentence of "approximately [three] years [and] [eight] months."  A pleading from the prosecution indicated that Cardenas was "arrested in Mexico sometime between 2012-2014."  A Mexican record shows that he was arrested in March 2012, but a second

record suggests that he committed another crime in May 2014.[1] The record does not state whether he was incarcerated at the time of the 2014 offense, nor does it indicate the type of crime or provide sentencing information.

¶ 4    In May 2016, the Mexican government sent the United States Department of Justice (DOJ) an extradition agreement in Spanish. There is no official translation in the record, but an email from the DOJ indicates that Mexico granted the extradition request. However, in August 2016, the DOJ informed the DA that Cardenas had "pending criminal charges" in Mexico, and his extradition was "suspended until further notice." In July 2017, the DOJ told the DA that the "Mexican domestic case was still in the early stages . . . , so it will likely be a while still before that process is complete." In November 2017, the DOJ wrote that "[t]he case is in the early stages of the process (presentation of evidence)." The DOJ

---

[1] The 2012 record shows a "Fecha Captura," or arrest date, of March 21, 2012. The 2014 record shows a "fecha de delito," or offense date, of May 17, 2014. *See* Sean Dean Stromberg, *Legal Terminology Dictionary: A Bilingual Dictionary for Legal Translation and Court Interpreting* 139, 156, 166 (Darlene M. Johnson ed., 2018) (defining "fecha" as "date," "delito" as "offense, crime," and "captura" as "capture, apprehension, arrest").

also indicated that "the U.S. matter [was] deferred pending the resolution of the [Mexican] case," presumably referring to the extradition matter. In October 2018, the DOJ again stated that the Mexican case was "still at the early stages of the process (presentation of evidence phase)." And in May 2019, the DOJ reiterated that Cardenas's extradition was "deferred due to Mexican charges."

¶ 5 Finally, in June 2019, the DOJ notified the DA that Cardenas had been acquitted in the 2016 Mexican case. He was surrendered to the United States government on July 19, 2019.

¶ 6 In 2023, he pleaded guilty to second degree murder and first degree assault and was sentenced to a total of seventy-five years in the Department of Corrections' custody. At the sentencing hearing and in later briefs, Cardenas argued that he was entitled to PSCC starting in May 2016, while the prosecution argued that he was only entitled to PSCC beginning in July 2019 when he was extradited. The district court rejected Cardenas's argument and granted PSCC from July 19, 2019, until sentencing on November 17, 2023. On appeal, Cardenas argues that the court should have granted PSCC beginning in 2016. We disagree and affirm.

## II. Analysis

### A. Standard of Review and Applicable Law

¶ 7    "We review de novo whether a defendant is entitled to PSCC." *Fransua v. People*, 2019 CO 96, ¶ 11 (citation omitted).  PSCC is not discretionary and must be granted if a defendant is entitled to such credit.  *Edwards v. People*, 196 P.3d 1138, 1144 (Colo. 2008).

¶ 8    "A person who is confined for an offense prior to the imposition of [a] sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement." § 18-1.3-405, C.R.S. 2025.  Two factors guide our determination of whether a defendant is entitled to PSCC.  First, there must be "a substantial nexus between the conduct or charges for which he is confined and the sentence ultimately imposed." *Russell v. People*, 2020 CO 37, ¶ 5.  Thus, "a defendant is entitled to PSCC if 'the presentence confinement [was] *actually caused* by the charge or conduct for which the defendant is to be sentenced.'" *Id.* at ¶ 22 (citation omitted).  A substantial nexus exists if "the defendant would have *remained confined* on the charge or conduct for which credit is sought *in the absence* of any other charge." *Id.* at ¶ 24.  In other words, if he would have remained confined "if *only*

4

the sentencing charge existed," he "is entitled to PSCC so long as the credit would not be duplicative." *Id.* (citation omitted). Additionally, "[w]hen determining whether a substantial nexus exists, causation, not geography, is the defining question." *Id.* at ¶ 25. Therefore, "when a defendant is confined on charges from two different jurisdictions," we ask whether his confinement was "*caused* by the charges in both jurisdictions." *Id.*

¶ 9 Second, "a defendant is not entitled to duplicative PSCC." *Id.* at ¶ 26. Therefore, if he "commits a new crime while already serving a sentence . . . , the period of confinement prior to sentencing on the new offense will be credited only against the original sentence." *Id.*

## B. Application

¶ 10 Cardenas argues that he was entitled to PSCC from May 31, 2016, when the DOJ received the extradition agreement, until his 2023 sentencing. He contends that there was a substantial nexus between his Mexican confinement and the charges underlying his 2023 sentence because — according to his unofficial translation — the extradition agreement stated that the Mexican government provisionally detained him pending his extradition. So, he argues,

Mexico would have retained custody of him even if he was eligible for release from his 2012 and/or 2014 sentence(s). We reject this argument.

¶ 11 First, even accepting Cardenas's unofficial translation of the extradition agreement, his argument would only entitle him to PSCC from the time the extradition agreement was received until the 2016 Mexican charges were filed (at most three months). And although the first mention of those charges was an August 2016 email, the record is silent as to when the charges were filed. The record also does not state whether or when Cardenas was released (or scheduled to be released) on the 2012 and/or 2014 charge(s).[2] And although the DOJ estimated a sentence of three years and eight months for the 2012 crime, there is no information about when that sentence began or if there was an additional sentence for

---

[2] On June 19, 2019, the day after the DOJ informed the DA of Cardenas's acquittal of the 2016 charges, a DOJ employee wrote that he "did not know when [Cardenas's] current sentence is being completed or how [the acquittal] [a]ffects that sentence." Although Cardenas argues that he was detained after his acquittal solely to await extradition, the record is unclear. A June 18 email said the extradition timing depended on the Mexican prosecution's decision to appeal, while the June 19 email suggests that Cardenas may have had time left on his original sentence.

the potential 2014 crime.  Therefore, it is possible that he would have remained in Mexican custody on those charges even absent any provisional detention pending extradition.  *See id.* at ¶ 24.

¶ 12    Second, the record is clear that Cardenas's confinement from August 2016 until June 2019 was due to the 2016 charges.  From 2016 to 2019, the DOJ repeatedly explained that Cardenas's extradition was delayed due to the Mexican criminal proceedings.  In other words, his confinement in Mexico was caused by the charges in Mexico, not the charges in the United States.  *See id.* at ¶ 25.  And because he was detained in Mexico due to at least the 2016 charges and possibly the 2012 and/or 2014 charges, we cannot say his confinement in Mexico was due *solely* to the charges for which he was sentenced in the United States.  *Id.* at ¶ 24.

¶ 13    Cardenas also contends that the district court erred by concluding that Mexico was unable to extradite him after the 2016 charges were filed.  Citing the "Delayed Surrender" portion of the United States-Mexico Extradition Treaty, May 4, 1978, 31 U.S.T. 5059, he argues that Mexico chose, but was not required, to

7

address the new charges before extradition.[3]  But whether Mexico

*could* have extradited him sooner is not the question.  What

mattered was *why* he was not extradited sooner and *why* he

remained detained in Mexico.  *See id.* at ¶ 22.  Moreover, the treaty

undermines Cardenas's argument that there was a substantial

nexus between the sentencing charges and his confinement in

Mexico.  It provides that Mexico can delay extradition (and prolong

confinement in Mexico) not because of the charges for which

extradition is sought but for "a *different* offense."  Extradition

Treaty, 31 U.S.T. 5059 (emphasis added).

¶ 14    In sum, Cardenas was in Mexican custody from approximately

August 2016 until June 2019 due to (at least) the 2016 Mexican

charges, and he would have remained incarcerated in Mexico on

those charges even if the charges for which he was extradited did

not exist.  *See id.* at ¶ 24.  Finally, because it is unclear when his

---

[3] The Treaty says, "The requested Party, after granting the extradition, may defer the surrender of the person sought when that person is being proceeded against or is serving a sentence in the territory of the requested Party for a different offense, until the conclusion of the proceeding or the full execution of the punishment that has been imposed."  Extradition Treaty, Mex.-U.S., May 4, 1978, 31 U.S.T. 5059.

original sentence(s) in Mexico ended, we also cannot conclude that he is entitled to PSCC for the time (1) after the extradition agreement was finalized and before the 2016 charges were filed or (2) after he was acquitted of the 2016 charges and awaiting extradition. *See People v. Bray*, 819 P.2d 528, 529 (Colo. App. 1991) (discussing PSCC for the defendant's time "spent in confinement awaiting extradition after his acquittal of the British charges"). He may have remained confined in Mexico on the 2012 and/or 2014 charges even if he was not awaiting extradition.

¶ 15     Because there was no substantial nexus between his confinement in Mexico for offenses committed in Mexico and the charges he was sentenced for in the United States, the district court properly calculated PSCC. And because there was no substantial nexus, we need not address whether PSCC would have been duplicative.

III.   Disposition

¶ 16     We affirm the order.

JUDGE J. JONES and JUDGE DUNN concur.